COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RAYMUNDO FLORES, | § | No. 08-24-00095-CR |
| Appellant, | § | Appeal from the |
| v. | § | 340th Judicial District Court |
| THE STATE OF TEXAS, | § | of Tom Green County, Texas |
| Appellee. | § | (TC# C-20-0265-SA) |

## MEMORANDUM OPINION[1]

Appellant Raymundo Flores was convicted of aggravated sexual assault of a child and sentenced to ten years' confinement. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). On appeal, Flores brings issues challenging the jury charge and the admissibility of evidence. Finding no error, we affirm.

## I. BACKGROUND

Flores was indicted on three counts of aggravated sexual assault of A.E, a child complainant.[2] Count One alleged Flores, on or about January 31, 2020, "intentionally and

---

[1] The appeal was transferred to this Court from the Third Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Third Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

[2] To protect the identity of the children referred to in this opinion, we will refer to the complainant in this case as A.E. and to the other child as A.H. For the same reason, we will refer to the children's mothers by their first names only. *See* Tex. R. App. P. 9.10.

knowingly cause[d] the anus of [A.E.], a child who was then and there younger than 14 years of age, to contact the sexual organ of [Flores][.]" Count Two alleged that Flores, on or about November 15, 2019, "intentionally and knowingly cause[d] the penetration of the mouth of [A.E.], a child who was then and there younger than 14 years of age, by the sexual organ of [Flores][.]" Count Three alleged Flores, on or about November 15, 2019, "intentionally and knowingly cause[d] the mouth of [A.E.], a child who was then and there younger than 14 years of age, to contact the sexual organ of [Flores][.]" All three counts alleged the acts occurred in Tom Green County.

Before trial, the State gave Flores notice of "possible 404(b), 609(f), 12.42, 38.37 and 37.07 evidence." Among its four listed items, the notice included an event occurring in Val Verde County, on May 22, 2009, involving a different child, A.H. Specifically, the State gave notice of possible evidence describing that Flores "contacted the sexual organ and anus of a child under fourteen years of age, [A.H.]"[3]

Because Flores does not challenge the sufficiency of the evidence to support his conviction, we provide a limited background for contextual purposes. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). During the guilt innocence phase of trial, the State called A.E., A.E's mother, a forensic nurse examiner, and law enforcement witnesses. It also presented testimony pertaining to the noticed-event of May 2009. For the defense, Flores testified on his own behalf, and he called two witnesses, a forensic nurse and a co-worker who knew him and A.E.'s mother.

---

[3] The trial court conducted, outside the jury's presence, a hearing on the 2009 event, after which it sustained Flores's Article 38.37 objection, but overruled his Rules 404 and 403 objections.

Relevant to Count One of the indictment, A.E.'s mother (Katy) testified she had four children, the youngest of which she had with Flores. Katy and Flores were married and the family lived in San Angelo, which is located in Tom Green County. Before moving there, the family had lived in Big Lake, which is situated in Reagan County. A.E., who was 12 years old at the time of the offense, was Katy's second-oldest child, and she was born of a prior relationship. On the day of the charged offense, or January 31, 2020, the family returned home from a trip to a store. They all planned on watching a movie in their living room. While Katy put the baby to bed, she told the others to start without her. When she returned to the living room, she saw Flores and A.E. lying on a sofa next to each other. When she saw that the bottom half of Flores's and A.E.'s bodies were covered with a blanket, she thought it "odd."

Katy reached over to turn on a lamp. At that point, A.E. sat up and took off the blanket. Katy then saw that, when A.E. got up from the sofa, her underwear and shorts were pulled down "[c]loser to her knees than her genitals[.]" Katy asked A.E. whether it was the first time or how many times had this occurred. A.E. responded, "it was not the first time[.]" Katy then sent A.E. to get her sister and the baby and go to her master bedroom. Flores remained on the couch. Katy confronted him, asking him why it happened. She described that he had his shirt and shorts on at the time. Flores responded by first blaming Katy. Then he blamed A.E. He said she wanted it and she had provoked him.

The next day, Katy and the children left the house and went to her mother's house in Del Rio. When asked about her plan at the time, Katy replied that she did not have a plan, she "just needed to make sure that [her] kids were going to be okay and that nobody was going to come and take away [her] kids." Katy described she was concerned about CPS taking her children because her "daughter was in danger, and [she] was there at home and [she] didn't see it." After Katy talked

3

with her mother about what had happened, they contacted her mother's friend who reassured Katy that no one would take her children from her.

On February 3, 2020, Katy went to the sheriff's department to report the incident. Initially, she went to the Val Verde County Sheriff's Department in Del Rio where her mother lived. However, because the incident occurred in San Angelo, not Del Rio, the Deputy Sheriff contacted the San Angelo Police Department. A few days later, Katy met with a detective of the San Angelo Police Department who arranged for a forensic interview with A.E. for the next day. A SANE examination occurred on February 8, 2020. Katy also turned over to police the clothing A.E. had be wearing at the time of the incident, after the items had already been washed.

At trial, the State also called A.E., who was 16 years old at that time. A.E. testified she was "close, really close" to Flores who was her stepfather, but she called him "dad." She said Flores was the "fun" parent and her mother was the "strict" parent. A.E. said that on January 31, 2020, she and Flores were in the living room watching a movie and they were on separate sofas. She described that Flores asked her to lie down on the couch with him. She explained they both laid horizontally facing the television. As she started to fall asleep during the movie, she felt Flores pull down her shorts and panties. Although she was still awake, she pretended to be asleep to see if he would stop what he was doing. Instead, she felt Flores pull down his own shorts and his underwear. She testified, Flores, "then, after, he took out his private part and was putting it in my butt." When asked to clarify what she meant by "private part," whether she knew of other words to explain, A.E. answered, "Yes, uh, dick and penis." A.E. added that it felt weird, and she flinched and moved, to avoid the contact. She continued by describing that "his penis slipped down . . . because it was wet." Later, she saw a stain on her underwear. A.E. described that, when her mother first looked into the living room, "[Flores], like, rushed to pick up his pants and underwear, shorts." When her mother entered the room, A.E. argued with her to avoid her seeing that her underwear

4

and shorts had been pulled down. Eventually, when A.E. stood up from the sofa, her shorts and panties were at her mid-thigh. Her mother looked at her and started crying before she argued with Flores.

Near the close of the State's case-in-chief, after a hearing held outside the jury's presence, the trial court overruled objections and permitted the jury to hear testimony from three witnesses all pertaining to the 2009 act included in the State's notice. Rosy, A.H.'s mother, testified that she and Flores had been in a relationship and lived together "many years ago." At the time, her eight-year-old daughter (A.H.) and her five-year-old son lived with them. Rosie said her relationship with Flores ended "[b]ecause a situation happened" where she "caught [Flores] in bed with [A.H.]" On that occasion, Rosie described she woke up in the middle of the night and went from her bedroom to check on her children. When she entered A.H.'s bedroom and turned on the light, she found Flores in bed with her daughter. Flores told Rosie that her daughter had been cold and he was covering her with a blanket. Rosie did not remember whether Flores's pants were down when he got up from the bed. Rosie said she could not remember if Flores was under the cover with her daughter, or lying on top. When Rosie pulled the cover back from A.H., who remained asleep at the time, she saw that A.H.'s jeans and underwear were pulled down, exposing "her butt cheeks." Rosie said the jeans that A.H. had been wearing were not what she typically wore to bed, but after a cookout earlier in the day, A.H. had fallen asleep in her clothing. She did not agree the jeans could have been pulled down by A.H. moving around because they were "a little bit hard to move." She also did not believe A.H. would have loosened the jeans herself.

Rosie testified she called the police and later took A.H. to the hospital because she was unclear about what had happened. At the hospital, Rosie was told that her daughter was "okay [and] there was no penetration[.]" Rosie said A.H. never complained to her that something happened with Flores. She also did not know what, if anything, A.H. said during a SANE

5

examination performed without her in the room. She said Flores was never charged or arrested. Constable Gerardo Hernandez, who was a patrol officer in 2009, testified at trial. He said he was the first officer to respond when Rosie called the police. Constable Hernandez said Flores was not arrested and he did not know if Flores was ever charged with an offense.

A.H. also testified before the jury. By then, she was 23 years old, and she knew Flores had been her mother's boyfriend. When asked if she remembered the night of the alleged offense, she replied, "I just remember lights. It's just, like, bits and pieces, but I didn't -- I thought it was a dream." Although she remembered going to the hospital, she could not remember "anything bad happening to" her.

At the end of its case-in-chief, the State abandoned Counts Two and Three of the indictment.

In the defense case-in-chief, Flores and two other witnesses appeared. As to the charged offense of January 2020, Flores said earlier that day, the family went shopping and brought home food for dinner, which they ate in the living room while they watched TV. Later, he fell asleep on a sofa. He said A.E. woke him up twice because he was snoring, but she never got on the sofa with him. Flores said the second time A.E. woke him up she was standing next to the sofa clapping her hands and that was when Katy walked into the room. He denied ever lying on the same sofa with A.E., although he said they sometimes sat on the same sofa. Regarding A.E.'s testimony that the January 2020 incident had happened at "night," Flores testified that he worked nights. He denied there was "any situation [he was] aware of where . . . something . . . could have been perceived to have occurred, . . . [like him] having [his] penis touch her anus[.]"

Flores testified that, after Katy told A.E. to go to another room, she confronted him about an issue with their relationship. Holding his phone, she asked Flores, "Who are these bitches?" H described she was angry with him because she found that he had been texting other women. He

6

responded to Katy, "it's not what it looks like." He then walked into another room and closed the door. He did not want to talk to her until the next day, after she "cooled off." He testified that Katy screamed at him through the closed door, saying she wanted a divorce. When Flores awoke the next morning, he found Katy putting things into her car. It was days later, on February 14, 2020, that police officers came to his house, presented him with an arrest warrant, and took him into custody.

Flores denied the allegations of oral sex with A.E. and said there was no situation where A.E. could have been confused about something (like a lollipop) being put in her mouth. When asked why A.E. would make the accusations, Flores testified, "she listens to Mom a lot," and "[w]hatever her mom says, she's going to do." When asked why Katy would make the accusation against him, he said that perhaps "she was doing something wrong that got her to that point where [CPS was] going to take away her kids and [it] makes it easier to blame somebody." On cross-examination, Flores was asked whether he was "drawn to women with big tempers," and why two separate women would have made up allegations of him being in bed with a child with their pants down. In response, Flores testified: "Well, like I said before, some people have it -- they take it -- their anger differently than everybody else, or unless they know something that other people don't know, or it depends on how the law helps them out more."

Specific to the event of 2009 involving A.H., he said that he had turned on the air conditioning in the house because he was hot at the time. Because he knew the two children would get cold, he went into the room where the boy was sleeping and covered him up. Next, as he covered A.H., Flores described that Rosie "came in and turned on the lights and asked me what I was doing." Flores said he told Rosie he was covering up the children because he had turned on the air conditioning. He denied snuggling up to A.H. and said that was something he had not done in the past.

7

Flores said that after he spoke to Rosie, he went into the kitchen while Rosie stayed with A.H. Rosie then came into the kitchen and asked him whether he had done anything and he told her that he had not. He said Rosie told him she wanted to leave and she called the police presumably because she was mad at him because he had been drinking earlier in the evening. He characterized Rosie's testimony "as some people that don't like to let go of their grudge." Flores said the police came to the house, and later transported him to the police station, but he was never charged with a crime related to that event. Again, when asked whether the accusations made by Rosie had affected how he would act in the future, Flores testified he thought it was a dumb accusation from someone "always in a bad mood." Flores said that before he and Katy married, he told her that Rosie had accused him of "doing something wrong [to A.H.]," but he did not give Katy any details.

At the close of the guilt-innocence phase, the jury returned a verdict finding Flores guilty of aggravated sexual assault of a child, as charged in Count One, and assessed punishment at ten years' confinement. This appeal followed.

## II. ISSUES ON APPEAL

Flores presents two issues on appeal. First, he contends the trial court committed reversible error when, over his objection, it permitted language in the jury charge instructing the jury it could consider—for Article 38.37 purposes—evidence pertaining to the two indictment counts charged but abandoned at trial. Second, Flores argues the trial court abused its discretion when it admitted evidence of an alleged 2009 act. Although we address both issues, we reverse their order and begin with the evidentiary issue raised by the second issue.

## III. LIMITED USE EVIDENCE

In his second issue, Flores argues that the trial court erred by admitting evidence of an alleged 2009 act, after stating on the record that it found it did not believe a jury could find beyond

8

a reasonable doubt that the 2009 act was committed. The State counters with a three-part argument: (1) that the trial court correctly found the offered evidence was admissible for a limited use under Rule 404(b)(2)—to show motive, intent, absence of mistake, and other purpose; (2) the evidence was more probative than prejudicial as required by Rule 403; and (3) the trial court gave a limiting instruction directing the jury it could not consider the evidence unless it found beyond a reasonable doubt that the defendant did, in fact, commit the wrongful act; and even then, the instruction informed the jury it could only consider the evidence for the specific limited purpose of showing Flores's motive, intent, identity, or absence of mistake.

## A. Standard of review and applicable law

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc). When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391.

Generally, evidence of a "person's character or character trait," is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait. Tex. R. Evid. 404(a)(1). Similarly, evidence of a "crime, wrong, or other act" is also not admissible for the same purpose. Tex. R. Evid. 404(b)(1). However, as an exception, two separate parts of Article 38.37 of the Code of Criminal Procedure permit admission of a certain type of evidence when procedural safeguards are followed. First, Article 38.37, § 1(b) provides that, evidence of "other crimes, wrongs, or acts" committed by the defendant "against the child who is the victim of the alleged offense," shall be admitted for its bearing on relevant matters including (1) the state of mind of the defendant and child; and (2) the previous and subsequent relationship between the

9

defendant and child. Tex. Code Crim. Proc. Ann. art. 38.37, § 1(b). Second, Article 38.37, § 2(b) similarly provides that evidence that the defendant has committed "a separate offense," as listed under subsection (a)(1) or (2) of that provision, may be admitted in the trial of an alleged sexual offense against a child, for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant. Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). Providing a procedural safeguard, Article 38.37 requires the trial court to first hold a hearing outside the presence of the jury and find that the evidence in question will adequately support a jury finding beyond a reasonable doubt that the defendant committed the separate offense, and the State must give notice of its intent to introduce evidence under this provision at least 30 days before trial. Tex. Code Crim. Proc. Ann. art. 38.37, §§ 2-a, 3.

Second, Rule 404(b)(2) also provides an exception to prohibited evidence. Tex. R. Evid. 404(b)(2). This provision permits the admission of evidence of "a crime, wrong, or other act" when the evidence is admitted for another purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* Thus, although Rule 404(b)(1) provides "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Rule 404(b)(2) permits the use of the evidence for another purpose. *See De La Paz v. State*, 279 S.W.3d 336, 342–43 (Tex. Crim. App. 2009). Regarding the permitted purposes, "[t]he exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *Id.* at 343. As compared to Article 38.37, Rule 404(b)(2) more broadly allows evidence of not only crimes, but of other acts that are not criminal in nature, and unlike the prerequisites of Article 38.37, it does not matter what type of case is brought against the accused.

10

*Carrillo v. State*, No. 08-14-00174-CR, 2016 WL 4447611, at *7 (Tex. App.—El Paso Aug. 24, 2016, no pet.) (not designated for publication) (comparing Article 38.37 and Rule 404(b)(2)).

Yet, even when evidence is admissible under Rule 404(b)(2), a court may still exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence, including extraneous offense evidence, and presumes that relevant evidence is more probative than unfairly prejudicial." *Torres v. State*, No. 08-19-00309-CR, 2021 WL 3013307, at *4 (Tex. App.—El Paso July 16, 2021, no pet.) (not designated for publication). "With respect to Rule 403, because evidence of a prior sexual offense is especially probative of a defendant's propensity to commit another sexually-motivated offense, . . . the balancing analysis will not normally favor the exclusion of evidence of a defendant's prior sexual offenses." *Jackson v. State*, No. 11-22-00222-CR, 2023 WL 8262758, at *9 (Tex. App.—Eastland Nov. 30, 2023, no pet.) (mem. op., not designated for publication). On appeal, the defendant carries the burden to overcome this presumption and demonstrate that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice or of misleading the jury. *Torres*, 2021 WL 3013307, at *4. Like admission of evidence under Rule 404(b)(2), we review a trial court's decision to admit or exclude extraneous offense evidence under Rule 403 for an abuse of discretion. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022).

### B. Analysis

#### (1) Rule 404(b)(2)

During the opening statement of trial, Flores's attorney claimed the trial evidence would establish that A.E.'s mother had four or five days to "indoctrinate [A.E.] into this idea that she had been abused; and from [Flores's] perspective, this never happened." Counsel claimed that, after

A.E.'s mother moved out of the house and went to her mother's in Del Rio, she "decided that she was entitled to all of their stuff." From [Flores's] perspective, he's lying on the couch; there's no hugging; there's no cuddling; they're there watching TV until Katy comes in screaming about the [text] messages."

Before closing its case-in-chief, the State announced it would call witnesses pertaining to the 2009 act included in its pretrial notice. Next, the trial court held a hearing outside the jury's presence. When the trial court remarked it had an understanding that the evidence would be taken up pursuant to Article 38.37, defense counsel responded that he wanted to clarify. He remarked that, even though Article 38.37 had been mentioned at an earlier point, he understood the State's proffered witnesses would testify not about a prior offense between Flores and A.E, but rather, about a different child victim, or situation, involving a bad act. In that case, he argued Article 38.37 did not apply. The State informed the court it intended to argue that both Article 38.37 and Rule 404(b) applied, and it would show "an attempted situation." The court then directed the State to proceed and call its witnesses.

The State then called A.H's mother and an officer who had investigated the alleged 2009 event, both of whom were disclosed in the State's pretrial notice. Describing the circumstance, A.H.'s mother testified she had ended her relationship with Flores after she caught him in bed with her eight-year-old daughter. She described that she had awoken in the middle of the night and went to check on her children. After she turned on a room light, she found Flores in bed with her daughter, A.H. Before Flores left the room, he claimed he was covering the child because he thought she had been cold while sleeping. After Flores left the room, A.H.'s mother testified she had a bad feeling, so she pulled the cover off her daughter. At that point, she found her daughter's pants and underwear were pulled down below her butt. A.H.'s mother reported the incident to police.

12

After the witnesses completed their testimony and departed from the courtroom, the State argued to the court. It claimed the evidence would be admissible under both Article 38.37, § 2, and Rule 404(b), to show lack of mistake or accident, and to show that Flores committed the act with the intent to arouse or gratify a sexual desire. It also argued the evidence showed identity of the perpetrator because it revealed "a signature," that it was very similar to the circumstances of the charged offense.

Flores's counsel responded with a two-fold claim. First, he called the trial court's attention to the State's pretrial notice, pointing out the notice alleged specific details regarding a prohibited type of contact with a child under 14 years of age. He argued the State's evidence did not conform with the details of its notice. Second, he argued the trial court needed to make a gateway finding that a jury could find guilt beyond a reasonable doubt as to the noticed conduct. In short, counsel urged the evidence had failed to establish that a bad act had happened, as it was described by the State's notice, and the evidence amounted to mere speculation.

After a brief recess was taken, the trial court announced its evidentiary ruling outside the jury's presence. The trial court stated:

> And I will tell you, as to 38.37, I don't think we get there. *I don't think the jury would believe beyond a reasonable doubt that one of the crimes that's listed occurred, or was attempted.*"

> Under 404, though, I think we do get there. I think it shows motive, intent, absence of mistake; and under 403, I think it's more probative than it is prejudicial. I'll allow the testimony (emphasis added).

After hearing those rulings, Flores's counsel asked for a limiting instruction, which the trial court granted. Upon resumption of trial, the trial court read an instruction to the jury prior to the State calling its witnesses, A.H.'s mother, an investigating officer, and A.H. The instruction informed the jury as follows:

> The State is now going to introduce evidence that the Defendant may have committed a wrongful act not charged in the indictment. The State offered evidence

13

to show -- will offer the evidence to show the Defendant's motive, intent, identity, and absence of mistake. You are not to consider this evidence at all unless you find, beyond a reasonable doubt, that the Defendant did, in fact, commit the wrongful act.

Even if you do find that the Defendant committed a wrongful act, you may consider this evidence only for the limited purpose I described -- or purposes, I will say. You may not consider this evidence to prove that the Defendant is a bad person, and because he's a bad person was likely to commit the charged offense here. Consider this evidence only for the specific and limited purpose I've described, because considering it any other way is improper.

Of the three witnesses called by the State, only A.H.'s mother provided details about the 2009 conduct itself. She testified about having discovered Flores in bed with her eight-year-old daughter, who was sleeping. After Flores left the room, A.H.'s mother testified that she discovered her daughter's pants and panties were pulled down such that her buttocks were unclothed underneath the bed cover.

On appeal, Flores argues that "just as a 38.37 analysis requires a threshold determination of whether a jury could believe the extraneous offense or act was committed beyond a reasonable doubt, so too does a 404(b) analysis." We disagree.

Rule 404(b)(2) permits the admission of evidence of "a crime, wrong, or other act" when the evidence is admitted for another purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). Moreover, under Rule 404(b)(2), the rebuttal of a defensive theory is one of the permissible uses for which "crimes, wrongs, or other acts" may be admitted. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Sandoval v. State*, 409 S.W.3d 259, 301 (Tex. App.—Austin 2013, no pet.). "This includes rebutting the defensive theory that the complainant fabricated the allegations against the defendant." *Sandoval*, 409 S.W.3d at 301; *see also Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) ("Our case law supports a decision that a defense opening statement, like that made in this case, opens the door to the admission of extraneous-offense

evidence, like that admitted in this case, to rebut the defensive theory presented in the defense opening statement."). To be admissible for rebuttal of a fabrication charge, "the extraneous misconduct must be at least similar to the charged one." *Newton v. State*, 301 S.W.3d 315, 317 (Tex. App.—Waco 2009, pet. ref'd) (quoting *Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002)). The requisite degree of similarity is not exacting, and the extraneous conduct need only be sufficiently similar to the charged offense. *Dennis v. State*, 178 S.W.3d 172, 178 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Here, Flores's defensive theory against the charged offense relied on his claim that A.E.'s mother fabricated the allegation because she was angry, and A.E. repeated the fabrication because she did whatever her mother wanted her to do. As permitted by Rule 404(b)(2), then, this theory opened the door to limited-use evidence concerning a crime, wrong, or other act involving Flores. *See Webb v. State*, 575 S.W.3d 905, 910 (Tex. App.—Waco 2019, pet. ref'd) (holding that, because defense counsel's voir dire and cross-examination advanced his defensive theory of fabrication and opened the door to use of extraneous-offense evidence to rebut that defense, and because the extraneous offenses proffered by the State were sufficiently similar to the offense charged in the case, an abuse of discretion was not shown by the court's overruling of defendant's Rule 404(b) objection). Moreover, the evidence of the 2009 act was sufficiently similar to the charged offense. *Newton*, 301 S.W.3d at 317.

Nevertheless, Flores argues that the trial court erred because it had already made a threshold determination under Article 38.37 that it did not believe the jury would believe beyond a reasonable doubt that "the crimes that's listed occurred[] or was attempted." Specifically, Flores maintains the trial court "stated on the record that the jury could not find beyond a reasonable doubt that [Flores] committed the alleged 2009 act, and the State presented no new evidence throughout trial that the trial court had not considered when it made that decision." Relying on

15

*Fischer v. State*, 268 S.W.3d 552, 553, 558 (Tex. Crim. App. 2008), Flores argues an extraneous act that is not proven beyond a reasonable doubt at a pretrial hearing may not be admitted for limited use purposes unless it is later proven by trial's end with additional evidence.

We disagree that *Fischer* applies as argued. There, the trial court admitted evidence of a defendant committing an extraneous theft offense, as charged by the penal code, which the State had sought to prove in a murder trial to show the defendant had access to the murder weapon at or near the time of the offense. *See id.* at 553 (citing rule 104(b) which provides "proof must be introduced sufficient to support a finding that the fact does exist" and allowing the trial court to "admit the proposed evidence on the condition that the proof be introduced later").

Unlike the circumstances of *Fischer*, the State in this instance did not attempt to prove the commission of an extraneous offense (as charged under the penal code) against the same complaining victim as the victim of the charged offense. *See* Tex. Code Crim. Proc. Ann. art. 37.38. Instead, the trial court admitted evidence of a bad act solely for a limited, permitted use under Rule 404(b)(2), and it also instructed the jury not to consider it at all unless it found, beyond a reasonable doubt, that Flores did, in fact, commit the act described by A.H.'s mother.

Accordingly, we conclude the trial court did not abuse its discretion in admitting evidence of the 2009 act for the limited purpose of showing motive, intent, identity, and absence of mistake. *Moses*, 105 S.W.3d at 627 (permitting the admission of extraneous offense evidence that had relevance apart from showing character conformity where the trial court's decision fell within the zone of reasonable disagreement). But even still, we must still consider whether the evidence additionally satisfied the requisites of Rule 403.

### (2) Rule 403

Under Rule 403, a court must assess the balance of factors including: (1) the inherent probative force of the evidence, (2) the State's need for the evidence, (3) any tendency of the

evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Torres*, 2021 WL 3013307, at *4.

### (a) Probative value and State's need for the evidence

The first two balancing factors involve the probative value of the evidence and the proponent's need for the evidence. *Torres*, 2021 WL 3013307, at *5. "Probative value" means more than simply relevance. *Gigliobianco*, 210 S.W.3d at 641. The phrase "refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Id.* If the proponent of the challenged evidence has other compelling or undisputed evidence to establish the proposition or fact that the challenged evidence seeks to prove, then the probative value of the extraneous offense evidence weighs far less than it otherwise might in the probative-versus-prejudicial balance. *Id.*

Comparing the testimony regarding the 2009 act with the charged offense in this case, both circumstances involve victims who are young children with a familial relationship (or a perceived relationship) with Flores. For this reason, the testimony about the 2009 act was probative of Flores's guilt for the charged offense against A.E., as the evidence established motive, identity or an absence of mistake, as far as him committing similar acts with children who are part of his household, and it particularly rebutted his claim that A.E.'s mother fabricated her testimony and indoctrinated A.E. based on her being angry with his texting activities.

17

Additionally, the State's need for the evidence was great as there was no third-party eyewitness or physical evidence corroborating A.E.'s account of the charged offense. *See Torres*, 2021 WL 3013307, at *5. As Flores points out, Katy had washed A.E.'s clothing and there was no physical evidence from the SANE exam. Because of these circumstances, evidence of a similar act under similar circumstances was needed as A.E.'s credibility was integral to the State's case. *See Caston v. State*, 549 S.W.3d 601, 612 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding extraneous offense testimony had considerable probative force and the State had great need for the evidence). We conclude these factors weigh in favor of admission of testimony about the alleged extraneous offense.

### (b) Unfair prejudice

The phrase "unfair prejudice" refers to a tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *Gigliobianco*, 210 S.W.3d at 641; *Inthalangsy v. State*, 634 S.W.3d 749, 758 (Tex. Crim. App. 2021). "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. "Unfair prejudice refers to the evidence's "tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *Perkins*, 664 S.W.3d at 216. "If the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice, the court should admit the evidence." *Inthalangsy*, 634 S.W.3d at 758.

On appeal, Flores asserts the State wanted to "poison the well" and make the jury believe he was a morally reprehensible man. The fact that evidence shows a defendant in a negative light is not sufficient to justify its exclusion on Rule 403 grounds. "Rule 403 does not allow the exclusion of evidence just because it is prejudicial to the defendant; all evidence that a defendant is guilty is prejudicial in this sense." *Trevino v. State*, No. 08-23-00111-CR, 2024 WL 339117, at

*4 (Tex. App.—El Paso Jan. 29, 2024, no pet.) (mem. op., not designated for publication); *see also*

*DeLeon v. State*, 77 S.W.3d 300, 315 (Tex. App.—Austin 2001, pet. ref'd) ("Almost all evidence

offered by the prosecution will be prejudicial to the defendant."). "To fall within the scope of

Rule 403, the risk must be of *unfair* prejudice." *Trevino*, 2024 WL 339117, at *4; *see also DeLeon*,

77 S.W.3d at 315 ("Only evidence that is *unfairly* prejudicial should be excluded.").

Here, the extraneous conduct involving A.H. contains facts similar to those in the charged

offense. In both instances, Flores was lying next to a young female with her pants down and a

blanket over them. Although we acknowledge this type of testimonial evidence can be prejudicial,

nonetheless, we do not find it was *unfairly* prejudicial. *See Belcher v. State*, 474 S.W.3d 840, 848

(Tex. App.—Tyler 2015, no pet.) (finding even though challenged testimony pertaining to an

extraneous offense was more "repugnant and inflammatory" than the evidence surrounding the

charged offense, the probative value in showing the defendant's propensity to sexually assault

children was so great that it was not outweighed by the danger of unfair prejudice). We conclude

this factor weighs in favor of admission of testimony about the alleged extraneous offense.

### (c) Confusion of the issues, undue weight, and cumulative evidence

"Confusion of the issues" refers to a tendency to confuse or distract the jury from the main

issues in the case. *Gigliobianco*, 210 S.W.3d at 641. "Evidence that consumes an inordinate

amount of time to present or answer, for example, might tend to confuse or distract the jury from

the main issues." *Id.* "Misleading the jury," refers to a tendency of an item of evidence to be given

undue weight by the jury on other than emotional grounds. *Id.* Finally, "undue delay" and "needless

presentation of cumulative evidence," are "self-explanatory and concern the efficiency of the trial

proceeding rather than the threat of an inaccurate decision." *Id.*

It is not likely the jury was misled here because the testimony about the extraneous conduct

involving A.H. did not contain any scientific evidence. *See id.* at 641–42 (explaining scientific

evidence might mislead a jury when they are not properly equipped to judge the probative force of the evidence). Additionally, the trial court provided the jury with instructions before they heard the testimony and provided an instruction in the jury charge that instructed the jury on the limited purpose for which it could consider the extraneous evidence. Lastly, the testimony of Rosie, Officer Hernandez, and A.H. was not repetitive and did not take up an inordinate amount of time.[4] *Id.* On this record, we conclude the last factors also favor admission.

### (d) Conclusion

After balancing the Rule 403 factors, we conclude the trial court could have reasonably determined that the probative value of the challenged evidence was not substantially outweighed by the countervailing factors. Therefore, the trial court's admission of testimony regarding the 2009 act involving A.H. was not a clear abuse of its broad discretion nor outside the zone of reasonable disagreement. Accordingly, we overrule Flores's second issue.

## IV. THE JURY CHARGE

In his first issue, Flores argues the trial court erred by instructing the jury to consider evidence of abandoned offenses for Article 38.37 purposes.

As relevant, the jury charge included the following instruction:

**Evidence of Wrongful Acts Possibly Committed by Defendant**
During the trial, you heard evidence that the defendant may have committed a wrongful act not charged in the indictment. The state offered the evidence to show the defendant's motive, intent, identity, and/or absence of mistake. You are not to consider that evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act. Those of you who believe the defendant did the wrongful act may consider it. Even then, you may consider this evidence only for the limited purposes described above. You may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense. In other words, you should consider this evidence only for the specific, limited purposes described above. To consider this evidence for any other purpose would be improper.

---

[4] Their testimony before the jury comprised less than 20 pages of the transcript.

20

Additionally, during the trial, you heard evidence that the defendant may have committed offenses contained within the indictment, which the state has now abandoned. The evidence was admitted before you because the state sought a conviction on those counts and was entitled to present the evidence prior to its abandonment. Therefore, you are further instructed that if there is any evidence before you in this case regarding the defendant's committing other crimes, wrongs or acts against the child (who is the alleged victim of the alleged offense in the indictment in this case), you cannot consider such evidence for any purpose unless you find and believe, beyond a reasonable doubt, that the defendant committed such other crimes, wrongs or acts against the child, if any. Even then you may only consider the same in determining its bearing on relevant matters, including (1) the state of mind of the defendant and the child, and (2) the previous and subsequent relationship between the defendant and the child, and for no other purpose.

During the charge conference, Flores objected to the instruction's second paragraph on two grounds. First, Flores argued any evidence related to the offenses alleged in Counts Two and Three should be disregarded by the jury because the State failed to present evidence under which a jury could believe the evidence beyond a reasonable doubt. To that end, Flores proposed an instruction that stated as follows:

During the trial, you heard evidence that the Defendant may have committed offenses contained within the indictment which the State has now abandoned. The evidence was admitted before you because the State sought a conviction on those counts and was entitled to present the evidence prior [to] its abandonment.

However, because the State has now abandoned those offenses, the evidence is no longer relevant, and therefore is not properly admissible. Therefore, you are to disregard the evidence related to those offenses, and not consider the evidence in determining whether Defendant has been proven guilty of the alleged offense of aggravated sexual assault of a child contained in this charge or for any other purpose.

Second, Flores contends the instruction actually given was improper because any evidence related to Counts Two and Three was not offered by the State during trial for Article 38.37 purposes.[5] Flores thus proposed the instruction be amended to reflect admissibility for the limited

---

[5] Section 1 of Article 38.37 authorizes the admission of evidence of other crimes committed "by the defendant against the child who is the victim of the alleged offense" that is the subject of a trial for its bearing on "the state of mind of the defendant and the child" as well as "the previous and subsequent relationship between the defendant and the child." Tex. Code Crim. Proc. Ann. art. 38.37, § 1(b).

21

purposes of showing motive, intent, identity, and absence of mistake. The trial court overruled both objections.

On appeal, Flores characterizes the abandonment of Counts Two and Three—after jeopardy attached—as the equivalent of an acquittal of the offenses alleged in those two counts; therefore, he contends the State was barred from offering any evidence of the two abandoned offenses. Flores does not assert that his double jeopardy right was violated.[6] Instead, he contends the jury charge improperly allowed the jury to consider extraneous offense evidence related to those charges. He argues that if abandoned charges are akin to an acquittal, and acquitted charges may not be introduced as extraneous offense evidence over a defendant's objection, then the "jury charge here . . . erroneously permitted [the State] to introduce abandoned indicted counts as extraneous offenses." Of note, Flores's argument conflates two complaints: (1) the State was allowed to use evidence related to Counts Two and Three as "extraneous evidence," and (2) the trial court committed reversible error when it permitted language in the jury charge that instructed the jury to consider evidence of the abandoned offenses for Article 38.37 purposes. We address Flores's complaint only as it relates to the jury charge.

## A. Applicable law and standard of review

Review of alleged jury charge error is a two-step analysis. *Zuniga v. State*, No. 08-23-00339-CR, 2025 WL 85438, at *6 (Tex. App.—El Paso Jan. 13, 2025, no pet.) (mem. op., not designated for publication). We first determine whether the charge is erroneous, and if it is, then we must decide whether Flores was harmed by the erroneous charge. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). When, as here, there was a timely objection to alleged jury-

---

[6] The State may, with the consent of the court, dismiss, waive, or abandon a portion of the indictment. *Duran v. State*, 492 S.W.3d 741, 745 (Tex. Crim. App. 2016). While such an abandonment "is tantamount to an acquittal" if it occurs after jeopardy has attached (i.e., after a jury is impaneled and sworn in a jury trial), *see id.*, those double jeopardy concerns are not implicated here where the State is not attempting a second prosecution for the same offense.

charge error, the record need only show "some harm" to obtain relief. *Id.* This has been "interpreted . . . to mean that any harm, regardless of degree, is sufficient to require reversal." *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007). We will assume without deciding that the jury charge was erroneous and consider only whether Flores was harmed by the error.

## B. Harm analysis

Flores contends he was harmed because he was not permitted to object to what became extraneous offense evidence because it was properly presented to the jury under the indictment and he was not afforded the opportunity to limit its impact on the jury.[7]

In evaluating whether a defendant was harmed by an erroneous jury instruction, the degree of harm must be measured in light of (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc); *see also French v. State*, 563 S.W.3d 228, 237 (Tex. Crim. App. 2018) ("Whether jury charge error is preserved or not, the degree of harm resulting from the error must be measured in light of all four factors identified in *Almanza*."). The harm must be actual and not merely theoretical. *French*, 563 S.W.3d at 237; *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). Neither party has the burden to show harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

### (1) Entire jury charge

The charge informed the jury only of Count One and informed the jury that the indictment is not evidence of guilt, that it is "simply a document that is required to bring a defendant to trial in a felony prosecution." After describing the presumption of innocence, the charge informed jurors "[y]ou must not consider the fact (if such is the case) that the defendant has been arrested,

---

[7] Flores does not explain how he would have limited the "impact on the jury."

confined, indicted, or otherwise charged. You may not draw any inference of guilt from any of these circumstances." After stating the relevant statute, the charge informed the jury it had to determine whether the State proved, beyond a reasonable doubt, the following elements: (1) the incident at issue occurred on or about the 31st day of January, 2020; (2) the incident at issue occurred in Tom Green County, Texas; (3) Flores caused A.E.'s anus to contact Flores's sexual organ; (4) Flores did so intentionally or knowingly; and (5) A.E. was then younger than 14 years of age. The jury was told its only duty was to determine whether Flores had been proven guilty and it must concern itself solely with that issue and restrict its deliberations to that determination.

Relevant to the complained-of portion of the charge, the jury was instructed that it could not consider evidence related to the abandoned counts unless it found and believed, beyond a reasonable doubt, that Flores committed such other crimes, wrongs or acts against A.E., and even then, it could only consider the evidence in determining its bearing on relevant matters, including (1) the state of mind of Flores and A.E., and (2) the previous and subsequent relationship between Flores and A.E., and for no other purpose.

### (2) State of the evidence and other relevant evidence

On the first day of the guilt-innocence phase, the trial court read all three counts of the indictment to the jury. In addition to the evidence related to Count One recounted above, A.E. also testified about two other incidents with Flores. A.E. was asked about the first time something happened with Flores and she replied that, as she was "[lying] flat on the bed, on [her] stomach," Flores got behind her, pulled down her underwear and shorts, and tried to put his penis in her "butt," "but it didn't go in." She said another time, when the family lived in Big Lake, Flores "whipped his penis out" and told her to open her mouth. He then put his penis inside her mouth, told her to close her mouth, and he moved "forward and backwards." She said Flores stopped attempting oral sex with her when the family moved to San Angelo. On cross-examination, she

24

was asked about the alleged oral contact to clarify that it did not happen in Tom Green County[8] and about her statement wherein she described the taste.

### (3) Parties' arguments

During opening statements, the State and Flores's attorney referenced only the January 31, 2020 allegation. The allegations of oral contact were only briefly mentioned during closing arguments. During the State's first closing, the State did not mention the allegations of oral contact. In his closing, Flores's attorney referenced the incident in Big Lake to discredit A.E.'s testimony:

> Same with, like, these oral sex allegations, if you think he committed these oral sex allegations. The State has abandoned them, so you're not going to see them here.
>
> Um, you know, I think they'll tell you they abandoned them, because [A.E.] got up and she testified about [sic] this occurred in Big Lake and Big Lake is in another county, and they can't prosecute crimes in other counties, right? But she also testified that -- to totally -- two different events; and we're talking, like, two times and two places; and her statements are that unreliable.
>
> Her statements are that unreliable that the State abandoned them, because they had other evidence that she had said before that occurred here, but they -- they didn't pursue that. They decided, we're going to take that out because . . . the statements are so unreliable, she's now saying it's in other counties so I guess we're going to go with that, and we're just going to dismiss it.

In response, during its final closing, the State stated only "[f]irst of all, [A.E.] says that was not the first time that he had done something to her."

### C. Conclusion

A.E.'s testimony about the alleged oral contact was brief and was not emphasized during arguments. To the extent the jury was allowed to consider A.E.'s allegations, it could do so only if it found and believed, beyond a reasonable doubt, that Flores had committed such other crimes, wrongs or acts against A.E. All of this suggests to us that the jury instruction, if erroneous, was

---

[8] The incident charged in Count One occurred in San Angelo, Tom Green County.

not "calculated to injure the rights of the defendant," Tex. Code Crim. Proc. Ann. art. 36.19,[9] and that any harm resulting from the error is purely theoretical and not actual. Therefore, we overrule Flores's first issue.

## V. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

GINA M. PALAFOX, Justice

April 22, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

---

[9] "Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial." Tex. Code Crim. Proc. Ann. art. 36.19.